**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY B. PUE, <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY TRANSIT CORP., <br><br> Defendant. | Civil Action No. 21-13557 (FLW) <br><br> OPINION |

**WOLFSON, Chief Judge:**

Plaintiff Anthony B. Pue ("Plaintiff"), proceeding *pro se*, filed this suit against Defendant New Jersey Transit Corporation ("Defendant" or "NJ Transit"), alleging that Defendant breached a collective bargaining agreement by failing to make certain pension payments to Plaintiff. After Defendant failed to file a responsive pleading or appear in the matter, the Clerk entered default against Defendant, and Plaintiff now moves for Default Judgment. In response, Defendant moves to vacate the Clerk's entry of default and cross-moves to dismiss the Amended Complaint. For the reasons set forth below, because this Court lacks subject matter jurisdiction over Plaintiff's potential federal claims, and because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim, the entry of default is **VACATED**, Plaintiff's Motion for Default Judgment is **DENIED**, and Defendant's Motion to Dismiss is **GRANTED**.[1]

---

[1]   Sine the pendency of these motions, Plaintiff filed a motion for summary judgment. Because I am dismissing the Amended Complaint, that motion is denied as moot.

1

I. **FACTUAL BACKGROUND**

Plaintiff, a New Jersey resident, is a former NJ Transit employee of 27 years. Am. Compl. ¶¶ 1-2. During his time at NJ Transit, Plaintiff was party to the "Retirement Plan for Amalgamated Transit Union Employees of New Jersey Transit Bus Operations" ("Retirement Plan"), which is a portion of a larger collective bargaining agreement ("CBA") that Plaintiff claims entitles him to certain retirement and disability benefits. *Id.* ¶¶ 2-6. In that connection, Plaintiff alleges that in March 2017, he suffered debilitating injuries on the job, and as a result, became permanently disabled and was forced to retire from service. *Id.* ¶ 2. On November 1, 2017, Plaintiff applied for a disability pension through the appropriate CBA mechanism, but in January 2018, his application was denied because he failed to file a disability award letter from the Social Security Administration. *Id.* Plaintiff alleges that he ultimately received a Social Security disability award letter in April 2018, and re-applied; however, according to Plaintiff, NJ Transit continued to deny him disability pension payments without any proper basis. *Id.* Plaintiff claims that despite these denials, under the Retirement Plan, he is owed back pay on his disability pension, as well as payments for vacation time and holidays. *Id.* ¶¶ 2-4.

Notably, nearly three years before filing a complaint in this Court, in August 2018, Plaintiff brought suit in New Jersey Superior Court to recover these same unpaid sums. ECF No. 19-1, Counsel Cert. Specifically, Plaintiff's state suit alleged that NJ Transit's denial of his retirement benefits violated the CBA and Retirement Plan, and requested that the state court grant Plaintiff his disability pension, as well as vacation and holiday pay—the same pension payment and back pay he seeks here. *Id.* Ex. A at 17. After motion practice and oral argument, the state court dismissed Plaintiff's claims with prejudice, finding that Plaintiff (1) failed to adhere to the mandatory arbitration provision in the CBA, (2) exhaust administrative remedies, and (3) file the

required notice of claim for contract claims against NJ Transit under state law. *Id*. Ex. B. Plaintiff filed a motion for leave to appeal with the New Jersey Appellate Division, which was rejected due to a procedural defect. *Id*. Ex. C. It does not appear that Plaintiff re-filed his appeal. As a consequence, the trial court's decision became final.

Turning to the present matter, Plaintiff filed a Complaint on July 12, 2021, and amended that complaint on July 20, 2021. ECF Nos. 1, 4. Although the Amended Complaint does not expressly identify any causes of action, on the face of that Complaint, Plaintiff's allegations sound in breach of contract, and request the same relief as his New Jersey Superior Court complaint. In addition, while no federal causes of action are asserted in the Amended Complaint, for reasons set forth, *infra*, the Court construes the Complaint as potentially asserting two additional federal claims: (1) violation of a collective bargaining agreement under § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a); and (3) recovery of benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a).

After Defendant failed to timely respond or otherwise make an appearance, Plaintiff filed a request for default, which the Clerk entered on December 8, 2021. ECF No. 8. On February 8, 2022, Plaintiff filed a Motion for Default Judgment, and the Court, in turn, gave Defendant until March 7, 2022, to respond. ECF No. 11. On February 23, 2022, Defendant's attorney, Paul T. Szypiotko, Esq., entered his appearance in the matter. ECF No. 12. Still, Defendant failed to file a response by the March 7 deadline. On March 14, 2022, counsel sent a letter to the Court explaining that he had been unaware of the deadline due to a change of attorneys in the matter, and requested that the Court, because of good cause shown, grant a continuance to oppose the Motion. ECF No. 15. The Court granted the continuance, and on March 23, 2022, Defendant filed an

3

opposition to Plaintiff's Motion for Default Judgment, requesting that default be vacated, and moved to dismiss the Amended Complaint. ECF No. 20.

Defendant's Motion primarily argues that the Clerk's entry of default should be vacated and the case dismissed, because Plaintiff has meritorious defenses, including Eleventh Amendment sovereign immunity, which would deprive this Court of subject matter jurisdiction over Plaintiff's claims. Regarding Eleventh Amendment sovereign immunity, Defendant argues that it is an "arm" of the State of New Jersey, and therefore, is immune from suit. Plaintiff opposes the Motion, but in the opposition, does not address Defendant's substantive arguments, and instead merely points out that Defendant failed to meet the necessary deadlines set by this Court for filing responsive pleadings and briefs, and argues that based on that reason alone, Defendant's request to vacate the default judgment should be denied. ECF No. 21.

## II. DISCUSSION

### A. Motion to Vacate

Under Fed. R. Civ. P 55(c), a "court may set aside an entry of default for good cause[.]" To determine whether good cause exists, the Court considers the following factors: "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 Fed. App'x 136, 139-40 (3d Cir. 2017). However, "[t]he threshold question . . . is whether [defendant] has established a meritorious defense," which "is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). In so doing, the defendant must "set forth with some specificity the

4

grounds for his defense," so the court may determine its substantive merit. *Harad*, 839 F.2d at 982. Importantly, "when considering a motion to vacate entry of default, the second factor is often considered to be the most important inquiry," and entry of default may be vacated if the defendant has advanced meritorious defenses. *Paris v. Pennsauken School Dist.*, No. 12-7355, 2013 WL 4047638, at *2 (D.N.J. 2013); *Mrs. Ressler's Food Products v. KZY Logistics LLC*, 675 Fed. App'x 136, 141 (3d Cir. 2017) ("[I]f the defaulting defendant has advanced meritorious defenses . . ., a default judgment may be vacated[.]").

Here, Defendant argues that it has substantial defenses to Plaintiff's claims, one of which is sovereign immunity. Indeed, that defense, if meritorious, would deprive the Court of subject matter jurisdiction over Plaintiff's potential federal claims. Since I must, as a threshold level, determine whether the Court has jurisdiction, the Clerk's entry of default is vacated. Indeed, if the Court were deprived of jurisdiction, I could not enter default judgment in this case in any event. In that connection, because Defendant's defenses mirror its arguments on its Motion to Dismiss, I will proceed to substantively analyze those jurisdictional arguments, *infra*.

### B. Motion to Dismiss

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim when there is no subject matter jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citations omitted); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). On a facial attack, courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff,"

5

since the motion contests the sufficiency of the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

On a factual attack, courts may "consider evidence outside the pleadings," such as affidavits, since the motion contests the underlying basis for jurisdiction. *Gould Elecs. Inc.*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) ("[A] factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.") (quotations and citation omitted). In such circumstances, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," *Mortensen*, 549 F.2d at 891, but "must be careful []not to allow its consideration of jurisdiction to spill over into a determination of the merits of the case, and thus must tread lightly." *Kestelboym v. Chertoff*, 538 F. Supp. 2d 813, 815 (D.N.J. 2008) (quotations and citation omitted). The proponent of jurisdiction bears the burden to prove that it exists throughout the litigation. *Mortensen*, 549 F.2d at 891.

Here, based on the pleadings of the Amended Complaint, it is clear that the Court does not have subject matter jurisdiction over any of Plaintiff's claims. To maintain subject matter jurisdiction over a lawsuit, the Court must either have diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. Neither exists here. First, the parties are not diverse. According to Plaintiff's Amended Complaint, he is a resident of Ewing, New Jersey. Am. Compl. at 1. Defendant, of course, is a New Jersey entity, because it is part of the New Jersey state government's Department of Transportation. *Karns v. Shanahan*, 879 F.3d 504, 517 (3d Cir.

2018) ("[C]onsistent with the New Jersey Constitution, NJ Transit is 'allocated within the Department of Transportation, which is a principal department within the Executive Branch of the State of New Jersey[.]" (internal citation omitted)).  Therefore, because both parties are at home in New Jersey, the Court does not have diversity jurisdiction.  Second, Plaintiff does not raise a federal question on the face of the Amended Complaint.  As noted *supra*, Plaintiff's Amended Complaint appears to only assert a claim for breach of contract.  This basis, alone, subjects Plaintiff's Amended Complaint to dismissal.

Nevertheless, in light of this Court's obligation to construe the Amended Complaint liberally, and because Plaintiff's requested relief involves retirement benefits allegedly owed pursuant to a CBA, the Court will liberally construe the Amended Complaint to bring three potential claims, two of which are predicated upon federal law: (1) common law breach of contract; (2) violation of a collective bargaining agreement under § 301 of the LMRA; and (3) recovery of benefits under ERISA.  *See Higgs v. Atty. Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").  However, the Court lacks jurisdiction over the federal claims.

As an initial matter, Defendant argues that this Court lacks jurisdiction over any federal claims based on sovereign immunity.  However, the Court need not address whether sovereign immunity applies, because the Court lacks subject matter jurisdiction for a more fundamental reason, which is that NJ Transit cannot be sued either under the LMRA or ERISA by operation of the federal statutes themselves.

Under LMRA § 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties[.]" 29 U.S.C. § 185(a).  But

notably, the LMRA defines "employer" as "any person acting as an agent of an employer, directly or indirectly, but shall not include the United States . . . or any State or political subdivision thereof[.]" 29 U.S.C. § 152(2). Thus, "even though a state or political subdivision may sign and be a party to a collective bargaining agreement, it remains immune from federal lawsuits arising under the collective bargaining agreement and relevant federal law." *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841, (7th Cir. 2015); *See Felice v. Sever*, 985 F.2d 1221, 1226-27 (3d Cir. 1993) ("We have previously held that the term 'employer' . . . excludes 'any State or political subdivision therefore,' and therefore the federal courts lack subject matter jurisdiction over a duty of fair representation claim brought by an employee of such an entity." (internal citation omitted)). Notably, "[t]he LMRA does not define the term 'political subdivision,' but [in *NLRB v. Natural Gas Utility District*,] the Supreme Court [] adopted the definition formulated by the National Labor Relations Board (NLRB)." *Shrieves v. Phil. Facilities Manag. Corp.*, No. 19-4865, 2020 WL 7240450, at *10 (E.D. Pa. Dec. 8, 2020); *see Crilly v. Se. Pa. Transp. Auth.*, 529 F.2d 1355, 1358 (3d Cir. 1976) (citing *NLRB v. Nat. Gas. Util. Dist.*, 402 U.S. 600 (1970)).

Under the *Natural Gas* test, an entity is an exempt political subdivision of a state if it is "either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Crilly*, 529 F.2d at 1358. Importantly, these two tests substantially and substantively overlap with the "arm of the state" test, which the Third Circuit has applied to find that NJ Transit is sufficiently intertwined with New Jersey such that it "is entitled to claim the protections of Eleventh Amendment immunity." *Karns*, 879 F.3d at 519 (finding that NJ Transit is an "arm of the state" after applying the following three-part test: (1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what

8

degree of autonomy the entity has).  Based on the Third Circuit's prior considerations, it is clear that both *Natural Gas* tests are satisfied, here.

First, by statute, NJ Transit is "allocated within the Department of Transportation," N.J.S.A § 27:25-4, and "constituted as an instrumentality of the State exercising public and essential governmental function." N.J.S.A. § 27:25-4.  Furthermore, NJ Transit officers are vested with "general authority, without limitation, to exercise police powers and duties . . . in all criminal and traffic matters at all times throughout the State." N.J.S.A. § 27:25-15.1(a).  The fact that NJ Transit may exercise New Jersey's official police powers also supports the notion that NJ Transit was created to be a conduit of the state. *See Karns*, 879 F.3d at 519.  Second, NJ Transit is administered by individuals responsible to public officials.  The New Jersey Governor appoints the NJ Transit governing board, which also includes several Executive Branch members. N.J.S.A. § 27:25-4(b).  Moreover, the New Jersey Governor continues to exercise control over NJ Transit after appointing the governing board, and may veto any action taken by the board. N.J.S.A. § 27:25-4(f).  Therefore, I find that NJ Transit is a political subdivision of New Jersey, and as such, is immune from suit under § 301 of the LMRA.

Aside from immunity, Plaintiff also cannot bring ERISA claims against Defendant, because the parties' CBA and Retirement Plan are "governmental plans" exempt from ERISA. *See Koval v. Wash. Cnty. Redev. Auth.*, 574 F.3d 238 (3d Cir. 2009) (finding defendant political subdivision subject to ERISA's exemption for governmental plans).  In passing ERISA, Congress "created a federal cause of action for [pension] plan beneficiaries and participants to recover benefits due under a plan or to enforce the terms of the plan." *Plastic Surgery Center, P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020).  However, as part of the statutory scheme, Congress exempted "governmental plans" from ERISA, which are defined as plans "established

9

or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing," 29 U.S.C. § 1002(32); 29 U.S.C. § 1003(b)(1) ("The provisions of this subchapter shall not apply to any employee benefit plan if such plan is a governmental plan (as defined in section 1002(32) of this title)."). As with the LMRA, the Third Circuit has endorsed the *Natural Gas* test as the proper method for determining whether an entity is a political subdivision exempted from application of ERISA. *Koval*, 574 F.3d at 241 ("We hereby endorse the [*Natural Gas*] test as the appropriate analysis to apply in determining whether a state-affiliated entity is a 'political subdivision' of the state for purposes of 29 U.S.C. § 1002(32)."). For the same reasons as those stated *supra*, NJ Transit is a political subdivision for purposes of ERISA.[2] Therefore, the CBA and Retirement Plan are exempt from ERISA under 29 U.S.C. § 1003(b)(1), and this Court does not have subject matter jurisdiction over such a claim. *Id*. at 244 ("The WCRA's benefit plan is a 'governmental plan' exempt from ERISA under 29 U.S.C. § 1003(b)(1), and therefore the District Court correctly ruled that it did not have subject matter jurisdiction over Koval's claims."). Thus, to the extent Plaintiff intends to assert claims under the LMRA or ERISA, the Court lacks subject matter jurisdiction over those federal claims.

Regarding the state contract claim,[3] because the I have dismissed the federal claims, the Court may only adjudicate Plaintiff's contract claim if the Court exercises supplemental

---

[2] Notably, under the "Applicable Law" section of the Retirement Plan, it states: "[T]his Plan was established and is operated consistent with the basic principles of [ERISA], even though as a governmental pension plan . . ., this Plan is not subject to the requirements set forth in Title I of ERISA." Counsel Cert. Ex. A at 76.

[3] Although NJ Transit is an arm of the state entitled to sovereign immunity, by statute, NJ Transit may be sued for contract claims under the New Jersey Contractual Liability Act ("NJCLA"), N.J.S.A. § 59:13-1, *et seq*. N.J.S.A. § 27:25-19 ("Notwithstanding any of the provisions of the

jurisdiction over it. I decline to do so. The federal supplemental jurisdiction statute specifies that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-1285. Indeed, under Third Circuit precedent, a presumption against exercising supplemental jurisdiction arises where all claims over which the court had original jurisdiction are dismissed "before trial." *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (affirming dismissal of state law claims for lack of supplemental jurisdiction at summary judgment stage).

Here, the facts of the present matter weigh against exercising supplemental jurisdiction. Plaintiff has already obtained one bite at the apple on his contract claim against Defendant, which the state court dismissed for failing to exhaust administrative remedies under the NJCLA. Counsel Cert. Ex. B. Despite being advised by the state court that he must exhaust his administrative remedies under the NJCLA before bringing suit, Plaintiff has provided no indication to this Court that he has done so since the state court's decision. As such, instead of exercising jurisdiction to

---

'New Jersey Contractual Liability Act" to the contrary, contract claims and suits against [NJ Transit] shall be governed by said act.").

resolve the question of exhaustion, I decline to exercise supplemental jurisdiction. Plaintiff may bring his contract claim in state court, if appropriate.[4]

### III. CONCLUSION

For the reasons set forth above, the Clerk's entry of default is **VACATED**, Plaintiff's Motion for Default Judgment is **DENIED**, and Plaintiff's Amended Complaint is **DISMISSED**. However, pursuant to 28 U.S.C. § 1367(d), Plaintiff may bring his state law contract claim in state court within 30 days of the date of this Order. Finally, Plaintiff's motion for summary judgment is **DENIED as MOOT**. An appropriate Order shall follow.

Dated: August 1, 2022                                    /s/ Freda L. Wolfson
                                                        Freda L. Wolfson
                                                        U.S. Chief District Judge

---

[4] I note that if Plaintiff did not intend to bring any federal claims, as explained *supra*, I would nevertheless lack jurisdiction to hear Plaintiff's contract claim.